Gary G. Colbath
Senior Litigator
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Counsel for Defendant David Andres Mayoral*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID ANDRES MAYORAL,<br><br>Defendant. | Case No. 4:25-cr-00006-RRB-SAO |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant David Andres Mayoral, through counsel, Gary G. Colbath, Senior Litigator, requests a sentence of 264 months in prison followed by 10 years of supervised release with many of the rigorous special conditions recommended in the Presentence Investigation Report ("PSR") including, among other things, necessary mental health and sex offender treatment. A custodial sentence of 264 months is reached after fair assessment of the § 3553(a) factors and a conclusion that the Guidelines overstate the danger Mr. Mayoral poses to the public in the distant future. The proposed sentence is undoubtedly substantial and reflects the seriousness of the offense while protecting the community from future similar conduct by Mr. Mayoral. The sentence also provides for his rehabilitation and eventual reintegration into the community. Mr. Mayoral seeks designation to a BOP

institution that offers SOMP treatment services and a recommendation that he be allowed to participate in the same.

## SENTENCING FACTORS

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing.[1] "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."[2] "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter."[3] In this case, the Guidelines overstate the future danger Mr. Mayoral poses to the public given his current young age and the length of time a sentence even as he requests would keep in custody prior to release. The proposed sentence of 264 months in prison, which is below the Guidelines but is still a period of 22 years – *the same amount of time he has been alive,* is nevertheless very substantial and reflects the seriousness of the offenses while providing for Mr. Mayoral's growth, rehabilitation and eventual reintegration into the community.

///

///

---

[1] *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).
[2] *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). *See also United States v. Gall*, 552 U.S. 38, 48-50 (2007); *Rita v. United States*, 551 U.S. 338, 350-51 (2007).
[3] *Nelson*, 555 U.S. at 351.

### 1. <u>History and Characteristics of Mr. Mayoral</u>

It is apparent that Daivd Mayoral grew up with physical disabilities and a mental health condition that impacted his growth and maturation. He struggled with speech development and communication and suffered bullying throughout his childhood that left him emotionally stunted, deeply insecure, and susceptible to significant mental health issues as he entered adolescence. Those continue to plague him to this day. Moreover, he was not raised in a nurturing home, as his father is an active-duty career military member who works full time, and has moved the family as his career necessitated. Mr. Mayoral was autonomous from a young age and was a reclusive child because of his conditions and social awkwardness.

As the youngest child without a structured or supportive environment, Mr. Mayoral never really learned the skills necessary to develop meaningful social relationships. His isolation during youth was compounded by his speech impediment and developmental delays at school, which further ostracized Mr. Mayoral from his peers. An older male cousin began to sexually abuse David at the age of five. This cousin and his father would visit the family approximately once per month and his uncle was emotionally abusive toward David. His older cousin began sexually abusing him on their visits and while the sexual abuse did not occur every visit, it continued for years and did not stop until David was approximately 11 years old. In addition to the abuse, his cousin introduced David at age six or seven to pornography as a mechanism to try to normalize or justify his abuse. Later, David came to use pornography as some kind of coping outlet to escape or control

Case 4:25-cr-00006-RRB-SAO    Document 47    Filed 03/30/26    Page 3 of 17

the nightmares he suffered related to his abuse and deal with his extreme loneliness in life. He never told his parents about the abuse at the time. Beginning even before middle school Mr. Mayoral tried to kill himself and he has suffered from a number of periods of suicidal ideation throughout his life since.[4]

Throughout high school, Mr. Mayoral was an overweight child. He was physically inactive and did not participate in school sports or outside activities. He chose instead to isolate and interact with peers mainly online. His diet and physical health suffered accordingly. However, after high school, Mr. Mayoral's father forced David to join the military in order to encourage him to "see the world" and to "get into shape." Following graduation and in the year prior to David joining the military, his father put him on a rigorous physical exercise regimen during which David lost 80 pounds. Despite this involvement in David's life, his father (and mother) was clueless as to the abuse and bullying he suffered or the mental anguish he was in during his entire youth.

Mr. Mayoral has no criminal history or arrests of any kind save for these offenses. He was never in legal trouble as a child, nor during his brief military career. Despite his years of sexual abuse as a child and suffering from his speech impediment since birth, David only first spoke with a counselor about being sexually abused after he was charged in the instant offense, and he did not tell his parents about it until after his arrest. He has never received treatment, been on regular medication, or had mental health services geared

---

[4] See report of Dr. Charles Samenow; PSR ¶92.

*United States v. David Andres Mayoral*
Case No. 4:25-cr-00006-RRB-SAO                                                      Page 4

toward addressing these issues. During his brief period of counseling with the military, David was diagnosed with post-traumatic stress induced anxiety and given medication to help with the condition. He briefly took the medication but discontinued it just prior to his incarceration.

Mr. Mayoral desperately wants help for his mental health condition. He is fully dedicated to participating in ongoing treatment and, critically, recognizes that rehabilitation will be a lifelong process.[5] He intends to enroll in BOP's SOMP treatment and participate in whatever programming is made available to him during his term of custody. He has a lifetime of development and maturing in front of him. Science has long recognized that the human brain does not even fully develop until an individual's early 30s, which leaves hope and room for David to learn from treatment and behavior medication therapy to address his condition and offense behavior.[6]

2. **Nature and Circumstances of the Offense, Seriousness of the Offense, Respect for the Law, and Just Punishment**

Mr. Mayoral recognizes that his offense conduct in this case is extremely serious. Although very devastating to his victims, Mr. Mayoral's conduct here was the result of a very secret and fantasy driven course that seemed like another world to him. In his youth and real life, Mr. Mayoral was a victim himself and never in control. He was the subject of ridicule and abuse and control by others over whom he had no power or say-so. In his

---

[5] *See* report of Dr. Charles Samenow.
[6] https://jacksonhealth.org/blog/new-research-shows-the-brain-has-five-stages-and-doesnt-fully-mature-until-early-30s/ .

isolation and efforts to escape such terror, he waded into the extreme world of the dark web where he could be anonymous and powerful and pretend to be anyone or anything he wanted. He found a sense of relief, and control, and almost companionship there. Others responded to him, some did what he asked, he was treated like a peer and someone worthy of respect or admiration. Because it was happening online, in places far away, often without him actually knowing what was real and what was fantasy, it became easier for Mr. Mayoral to engage in escalating and extreme conduct. It was outside his day-to-day life and the military – a world of almost make-believe, imaginary because it was built inside a machine that sat on his desk or done through his phone.

Today, removed from that process, David Mayoral has begun to appreciate the devastation his conduct has caused on others, victims suffering like he did or worse. He is remorseful for his actions. He wants to understand his own motivations and actions and "fix" himself. He hopes to learn to fully deal with his own history and now that conduct he has engaged in as a result. He wants to feel better, be better and ensure that he is never involved in anything like this ever again. He has no way to take back the harmful things he has done but only can work to participate in treatment, counseling and activities that foster rehabilitation and growth.

David is a capable and smart young man. He is educated and certainly has the capacity to learn from his past and be treated. Much like the commitment he made to change his physical condition and health that landed him in the military, David wants to immerse himself in long term treatment to try to understand the thinking patterns and

behaviors that resulted in his commission of these offenses and learn to change those in healthy and permanent ways. For these crimes, Mr. Mayoral now faces a statutory mandatory minimums of 180 months in prison.[7] The proposed sentence of 264 months is even more substantial and adequately reflects the seriousness of these offenses relative to his young age. Following his arrest in this case, Mr. Mayoral accepted responsibility for his actions, pleaded guilty without the benefit of a plea agreement, and has begun efforts toward personal development and rehabilitation in custody as much as possible.

The proposed sentence of 264 months recognizes that Mr. Mayoral's offense conduct is aggravated by nature and calls for more than the already high mandatory minimum. The term is arrived at, however, acknowledging these aggravated factors but also taking into consideration the mitigating circumstances of David's very young age, lack of prior criminal history and his own past sexual abuse victimization. These mitigating circumstances are particularly relevant in a case involving a first-time sex offense, such as Mr. Mayoral's, where sex offender treatment and other corrective and rehabilitation measures are critical in addressing underlying issues and reducing a defendant's risk of recidivism to an acceptable level before release. Congress recognizes this arrest/conviction distinction by increasing the mandatory minimum to 300 months for sexual exploitation of children only after a ***prior conviction*** for a sex offense.[8] The sentence here should be something less than that term.

---

[7] PSR at ¶ 102 (citing 18 U.S.C. § 2251(a)).
[8] *See* 18 U.S.C. § 2251(e).

Case 4:25-cr-00006-RRB-SAO     Document 47     Filed 03/30/26     Page 7 of 17

Mr. Mayoral has not received a single disciplinary action while in custody. This would be expected given his good behavior in the military. He does not have anti-authority issues, instead he thrives in a structured setting. This suggests that Mr. Mayoral will be successful in treatment and programming while at BOP and later on an extended term of supervised release with many of the rigorous special conditions recommended in the PSR including, among other things, necessary mental health and sex offender treatment. A sentence that is excessive actually promotes disrespect for the law and provides unjust punishment. Defense counsel submits that a sentence of 35-45 years in custody for conduct committed by a 20-year-old exclusively through the use of electronic means is excessive. To the contrary, a sentence to a term equal in years the period that David Mayoral has been alive (22 years) is sufficient, substantial, and reflects the seriousness of the offense while providing for Mr. Mayoral's rehabilitation and later reintegration into society.

### 3. Adequate Deterrence to Criminal Conduct

Empirical research shows no relationship between sentence length and deterrence.[9] Overall, research shows that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers.[10] "There is generally no significant association between perceptions of

---

[9] *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-29 (2006).
[10] *See id.*

punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms."[11]

For these reasons, a sentence of 264 months is appropriate. No evidence supports the argument that people in Mr. Mayoral's shoes before and during the commission of the offense will pay attention to the sentence in this case and be affected by it. In general, sex offenders know that their conduct is illegal and they could be sent to prison if caught. If deterrence will occur, no qualitative difference will exist between a sentence of 15, 20 or even 40 years in prison as any of those would send a strong message to anyone about the consequences of committing a sex offense of this type. General deterrence will be achieved with a sentence of 264 months. The general public will understand the lasting damage that this type of conduct creates, and certainly Mr. Mayoral will be deterred from repeating this behavior in the future.

### 4. <u>**Avoid Unwarranted Sentence Disparities**</u>

In determining the appropriate sentence, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[12] In assessing this factor, defense counsel cautions the Court against relying on overly broad and potentially misleading statistics. Of note, the PSR references "Judiciary Sentencing Information" in asserting that the median length of imprisonment for offenders in Criminal History Category I who are sentenced with the

---

[11] Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).
[12] 18 U.S.C. § 3553(a)(7).

maximum Base Offense Level of 43 under U.S.S.G. § 2G2.1 is 345 months.[13] The applicable Guideline, U.S.S.G. § 2G2.1, encompasses a sweeping range of conduct, such as using force against a minor during a hands-on offense, rendering a minor unconscious, and threatening a minor with death, serious bodily injury, or actual kidnapping, in the commission of a sexual act.[14] The Guideline also encompasses a wide swath of any number of potential victims, including infants, toddlers, and prepubescent minors.[15] Because of the varying conduct and victims subsumed within U.S.S.G. § 2G2.1, which would all result in the maximum Base Offense Level of 43 as in Mr. Mayoral's case, the Court cannot simply rely on the PSR or U.S.S.G. statistics to find that 264 months would result in an unwarranted disparity.

In order to avoid disparity, the Court should look at other cases from this District. One such case is *United States v. Jay Leavitt*, 3:17-cr-00072-SLG. Leavitt was charged with some of the same charges as Mr. Mayoral, Sexual Exploitation of a Child-Receipt of Child Pornography and Possession of Child Pornography, and Distribution of Child Pornography. Leavitt had a prior conviction for hands-on sexual abuse of a minor, was on state probation for that case, and was engaged in sex offender treatment when he was caught actively bartering child pornography through his google and twitter accounts. Leavitt had possessed and distributed both still images and videos at the time of his offense.

---

[13] PSR at 3. Mr. Mayoral did not previously object to the inclusion of these statistics in the Final PSR because they were not included in the Draft PSR.
[14] *See* U.S.S.G. § 2G2.1(b)(2)(B), app. n. 2.
[15] *See* U.S.S.G. §§ 2G2.1(b)(1), (b)(4), (d)(1).

His total offense level was identical to Mayoral's, 43, but his criminal history was *higher* – Category III not I. The government requested a 40-year sentence in that case, and Judge Gleason sentenced Leavitt to 20 years. In many respects, Leavitt's case was every bit as aggravated as Mayoral's conduct because he was a repeat, hands-on offender, on supervision for a sex offense and in sex offender treatment when he was distributing child pornography and perpetuating the marketplace for these prohibited images.

The Court should also look to *U.S. v. Tye Petersen*, 1:13-cr-00011-TMB. Petersen was charged with both Receipt and Distribution of Child Pornography. Peterson maintained numerous email accounts for the sole purpose of trading child pornography with others. He also "admitted he had taken photos of pictures of random children at school in the past three to four years, where he worked as a director of building maintenance, with the most recent incident occurring the day before his arrest." Peterson admitted he used some of the images to trade for child pornography…[a] total of at least 27 victims were identified, which were photographed by Peterson and at least eight were the result of photographs taken from a hole in the wall leading to a gym used by visiting school sports teams in various stages of undress. *See*, Govt's sent memorandum, Dk. 36, p. 5. Peterson also had a collection of videos of child pornography. Petersen had a total offense level of 37, and a Criminal History Category of I, a guideline range of 210-262 months, and was sentenced to 144 months despite the damage to dozens of young victims.

The Court should also consider the case of *United States v. Christopher Duane Davis*, 4:17-cr-00003-RRB. Davis and his co-defendant girlfriend were charged with

several counts of Production, Transportation and Distribution of Child Pornography. Davis was a tattoo shop owner in Fairbanks, Alaska. His girlfriend would babysit local children, and then allow Davis to sexually abuse and photograph the children. Davis would then trade those images of abuse on the internet for more child pornography. The two defendants could have been charged with at least six substantive counts of sexual abuse of a minor in state court, and five minor victims were identified. Three families had to move from Fairbanks to the Lower 48 because of the trauma to the children. Davis was also trading child pornography on the internet and soliciting photos of "hands on" abuse. Davis' total offense level was an astonishing 55. The government requested a sentence of 35 years and this Court sentenced Davis to that term. There is no argument that Davis' case is as or more egregious than the conduct in this case, and yet the government asks for a higher sentence here. Davis was in his thirties, had prior criminal history, and actively required his partner to assist in his crimes. Unlike Mayoral, he was a business owner with no mental health issues or history of abuse.

The Court could also look to the case of *United States v. Tommy Hansen*, 4:17-cr-00071-RRB. Hanson was charged with Receipt and Possession of Child pornography. He was previously convicted of Possession of Child Pornography in the District of Alaska and had already spent 96 months in BOP custody for that sex offense. Shortly after his release on to supervised release, Hanson was again found with hundreds of thousands of images of child pornography. Nevertheless, he took the case to trial but was convicted on all counts. He faced a mandatory minimum of 15 years on the Receipt, a mandatory minimum

five years on his supervision violation, and a guideline range of 210-262 months for his new conviction. The government asked for 20 years, the mandatory minimum allowable, and this Court imposed a sentence of 20 years. Hanson was a repeat offender and sophisticated computer user, who employed encryption and wiping software to conceal his enormous collection; he remained unwilling to recognize that child pornography is wrong and illegal and had showed no interest in addressing the issue of his sexual interest in children. Still, the government asked for, and Hansen was given, a sentence substantially less than what is requested in this case.

Another appropriate case for the Court's parity analysis is *United States v. Walls*, 3:18-cr-00076-SLG. Wall's criminal history included a prior delinquency adjudication on a charge of *aggravated child molestation*. With respect to his offense before this court, Walls was characterized by the government to be "a serial child sex offender who used popular social media applications to target, exploit[,] and abuse [at least three] juvenile females in Anchorage" and who had a "compulsion [] so strong that this predatory behavior continued even after the Anchorage Police Department served a search warrant at his [Army] barracks and advised him of their pending investigation."[16] Although he had a prior sex offense (unlike Mayoral) Walls was only in his late twenties, older than Mr. Mayoral. For his hands-on abuse of three minor victims, ages fourteen to sixteen, Walls received a sentence of 180 months from Chief Judge Gleason.

---

[16] *United States v. Walls*, 3:18-cr-00076-SLG, Dckt. 51 [Sentencing Memorandum by USA].

A final case the Court should compare is *United States v. Michael Ross*, 3:22-cr-00092-SLG. Mr. Ross plead guilty to one count of Sexual Exploitation of a Child (Production of Child Pornography) and one count of Sexual Exploitation of a Child (Possession of Child Pornography). Ross admitted to repeatedly sexually abusing his stepdaughter beginning when she was age 5 and continuing until after she turned 11.[17] He photographed and video taped the abuse on dozens of occasions and was in possession of those and other images and videos of CSAM when arrested. Ross's Guideline calculations were nearly identical to Mr. Mayoral's, a final offense level of 42, Criminal History Category I, a 360-life range. Based on Ross' years of hands-on abuse, torture, and recording of his daughter, the government asked for a sentence of 540 months. Ross, who was 32 years old at the time of sentencing, received a sentence of 360 months from Chief Judge Gleason.

Given David Mayoral's lack of any criminal history and his very young age, a sentence of 264 months followed by another 10 years of supervision would not create disparity between this case and others of similarly serious conduct in this District. Nor would such a term create disparity with respect to the advisory guidelines range for a defendant like Mayoral who is first-time offender, who is very young, has fully accepted responsibility, and is amenable to treatment. Defendants with these characteristics often

---

[17] The exact age range during which Mr. Mayoral suffered his own sexual abuse.

receive sentences below the Guideline's low end despite engaging in extremely serious conduct.

### 5. <u>Provide Restitution to Victims</u>

Mr. Mayoral is subject to the provisions of the AVAA of 2018 and urges the Court to impose a $3000 assessment per victim for a total of $12,000.[18] The Court should otherwise find that given his length of anticipated custody, Mr. Mayoral does not have the ability to pay a fine or the JTVA assessment.

### <u>BOP DESIGNATION</u>

Mr. Mayoral is in primary federal custody and will serve his term of imprisonment in a BOP institution. The BOP recognizes sex offenders as a vulnerable population within a prison setting. "Institutional assignment, unit management, Psychology Treatment Programs, and re-entry planning promote the well-being of sex offenders while incarcerated and help both the offenders and society by reducing the likelihood of re-offence after release."[19] Sex Offender Management Programs (SOMP) are provided at designated institutions and include both residential and non-residential treatment. This treatment "involves high intensity programming" where participants "learn basic skills and concepts to help them understand their past offenses [and] benefit from a therapeutic community . . . where they work to reduce their risk of future offending."[20] Participation

---

[18] PSR recommendations (citing 18 U.S.C. § 2259A).
[19] Federal Bureau of Prisons, Custody & Care, Sex Offenders, *available at* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.
[20] *Id.*

*United States v. David Andres Mayoral*
Case No. 4:25-cr-00006-RRB-SAO                                                    Page 15

in sex offender treatment is "voluntary" and typically occurs "in the final three years of their incarceration."[21] Because Mr. Mayoral has demonstrated a commitment to sex offender treatment and rehabilitation, he requests that the Court recommend his designation to a SOMP institution to help ensure his safety throughout the duration of his sentence and "to provide . . . correctional treatment in the most effective manner."[22]

## **CONCLUSION**

Mr. Mayoral asks the Court to impose a sentence of 264 months in prison following his decision to plead guilty and accept responsibility for his crimes. This period would incarcerate him for the same amount of time that he has been alive. It would provide just punishment, protect the public and give him ample time to engage in extended and meaningful sex offender treatment as he ages and matures. He is extremely young and not even fully developed. He will now do so in the custody of the BOP and locked away from society. He should be given the reasonable chance to rehabilitate and ultimately release back into the community.

The proposed sentence is undoubtedly substantial and adequately reflects the seriousness of the offense and need to protect the public while allowing him to rehabilitate through participation in BOP SOMP treatment services. Upon release from prison, Mr. Mayoral should be placed on at least a full decade of supervised release with the rigorous special conditions recommended in the PSR including, among other things, ongoing mental

---

[21] *Id.*
[22] 18 U.S.C. § 3553(a)(2)(D).

health and sex offender treatment to further his rehabilitation and to ensure his successful reintegration into the community.

DATED at Anchorage, Alaska this 30th day of March, 2026.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Senior Litigator

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on March 30, 2026. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*